Municipal Court of Cleveland.

NORTHERN FINANCE CORP. v. RAY WEISS, ET AL.

Decided October 18, 1933.

*Bernon, Mulligan, Keeley & LeFever,* for plaintiff.
*O. D. Eshelman,* for defendant.

LAUSCHE (F. J.), J.

The plaintiff in this action is an Ohio corporation engaged in the business of loaning money and accepting as security therefor mortgages on personal property and assignments of salaries and earnings.

The state has granted the plaintiff certain extraordinary rights and privileges as contained in the Small Loan Act of Ohio passed by the Legislature in 1929. The Act provides, among other things, that no person, firm or corporation making loans shall charge thereon a rate of interest in excess of eight per centum per annum without first having obtained a license so to do from the state of Ohio. The plaintiff did obtain such a license and hence was permitted to make loans and charge interest thereon in excess of eight per centum per year.

Section 6346-5 gives such a licensed company the right to charge interest at the rate of three per centum per month on the first $300.00 and eight per centum per annum on the sum in excess of $300.00.

The statute also provides that no bonus, fees, expenses, or demands of any nature whatsoever shall be made, paid or received directly or indirectly for such loans except that on loans which do not exceed $50.00 and are to be paid in more than four months an inspection fee of $1.00 may be collected at the time the loan is made.

Section 6346-5, General Code, reads as follows:

"Provided, however, that upon the amount in excess of three hundred dollars ($300.00) for principal owing to the licensee for any such loan, purchase or furnishing guaranty or security, no licensee shall directly or indirectly charge, contract for or receive any interest or consideration greater than at the rate of eight per cent. per annum, which

shall include all charges, shall not be paid in advance and shall be computed on unpaid monthly balances, without compounding interest or charges. The foregoing eight per cent. per annum limitation of rate herein made shall also apply to any licensee who permits any person, as borrower, or as endorser, guarantor, surety for, or as spouse of any borrower, to owe directly or contingently, or both, to the licensee at any time the sum of more than three hundred dollars ($300.00) for principal.

"If interest, consideration or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract and all the papers in connection therewith shall be void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever."

The plaintiff, on February 26, 1932, loaned to the defendant $635.00 as evidenced by a note in said amount and secured by a chattel mortgage conveying to the plaintiff the automobile involved in the instant action. The chattel mortgage contained the ordinary stipulations of a mortgage, but in addition thereto provided that the finance company, in the event the borrower violated the terms of the mortgage or note, might repossess the automobile and sell the same at public or private sale; that the finance company, in the event of such repossession, shall have the right to charge the borrower with attorney's fees, repair and storage expenses, and all other expenses incurred by the lender in repossessing the vehicle.

Subsequent to the making of the loan by the finance company the execution and delivery of the promissory note and mortgage by the borrower the latter defaulted in the payment of the monthly installments of $40.00 each. The finance company then brought this action in replevin, claiming that by reason of the borrower's delinquency in his payments it was entitled to the immediate possession of the automobile.

The defendant denied that the plaintiff was entitled to the vehicle, relying mainly upon the proposition that the mortgage upon which the replevin action was predicated was invalid and of no legal effect because it provided and contracted for charges in excess of those allowed by statute. The defendant also claimed that separate and apart

from the indirect usurious charges in the form of attorney fees, storage and repair charges the plaintiff directly violated the statute by charging more than three per cent. per month on the first three hundred dollars and more than eight per cent. per annum on the amount in excess of three hundred dollars.

The court is of the opinion and so finds the fact to be that the lender did not directly charge the borrower more than three per cent. and eight per cent., respectively, as above described, nor did it at any time actually receive any money in interest or charges in excess of those allowed by law.

The court, however, does find that the mortgage contained an agreement permitting the finance company, under circumstances previously described, to charge and collect attorney fees and the garage and repair expenses incurred in repossessing the mortgaged chattel. The court further finds that such charges are in violation of and specifically prohibited by the statute.

Did the act of the finance company, in contracting for charges in excess of those permitted by statute, invalidate the note and mortgage accepted by it respectively as evidence and security for the debt? If this question is answered in the affirmative, it then necessarily follows that the plaintiff should be denied the relief for which it prays.

In Ohio the law seems to be well established that a lender who in *an ordinary* transaction charges a rate of interest beyond that allowed by law can recover the amount loaned plus the legal rate of interest. The contract of loan is void only as to the charges in excess of the statutory limitations.

In this case we do, however, have a professional lender licensed by law and granted the right to charge certain exorbitant rates of interest. With this extraordinary grant, the state of Ohio has imposed certain inhibitions upon the rights of the licensees and has provided penalties for any violations thereof. The legislature specifically stated that "if interest, consideration or charges in excess of those permitted by this act shall be charged, contracted for or received, the contract and all the papers in connection therewith shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever."

There is no question that a contract expressly prohibited by statute is illegal and void and that no rights or obligation can accrue from it. It seems to me that the legislature did not intend to impose penalties for certain infractions for the purpose of collecting revenue but did so as a deterrant and so and as a protection for the public.

On this point the statute seems to be perfectly clear, because it not only provides a penalty for any violation, but also specifically declares "the contract and all papers in connection therewith shall be void."

Counsel for the plaintiff contends that the provision in the mortgage giving the finance company the right to collect attorney's fees, storage and repair expenses can not be construed to constitute a charge made by the lender in violation of the statute. It is his position that such moneys could not be collected from the borrower until they had actually been expended by the plaintiff.

According to my interpretation of the statute, the legislature intended to declare null and void all papers made in connection with a contract for a usurious loan. The legislature plainly stated in the second paragraph of Section 6346-5a, General Code, that if interest or charges in excess of that allowed by the act are received *or contracted for* by the licensee that in that event all papers taken in connection with the loan shall be null and void.

It seems of little consequence to this case whether the lender attempted to directly collect interest beyond that permitted by the statute or whether it attempted to do so by indirectly making charges in the form of attorney's fees, inspection, repair and storage charges, bringing its earnings on the loan to a point beyond that allowed by law. Regardless of the form in which the exorbitant profit on a loan is disguised, the courts will look to the substance of the charges and from it make its determination whether the loan is usurious or not.

In view of the foregoing, the court finds that the plaintiff is not entitled to the relief for which it prayed.